FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FEB - 7 2007

DAVID J. MALAND, CLERK
DEPUTY _____

| | | |
|---|---|---|
| DARCEL JONES | § | 1:07CV0074 |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| ACE AMERICAN INSURANCE COMPANY | § | JURY |
| ESIS, INC. and LINDA ALSBROOK | § | **Judge Clark** |
| Defendants | § | |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants ACE American Insurance Company, ESIS, Inc. and Linda Alsbrook ("Defendants") file this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 as follows:

## I.
## PROCEDURAL HISTORY

1.       On August 25, 2006, Darcel Jones filed Plaintiff's Original Petition and initiated an action against Defendants, ACE American Insurance Company ("ACE"), ESIS, Inc. ("ESIS") and Linda Alsbrook ("Alsbrook"), in the 60th Judicial District Court of Jefferson County, Texas, in Cause No. B-0177586 ("the State Court Action").

2.       Alsbrook was served with a copy of the Citation and Plaintiff's Original Petition on September 5. The undersigned counsel filed an answer for all Defendants on September 27. On October 5, Defendants timely removed the case to federal court because Plaintiff failed to allege any specific actionable conduct on the part of Alsbrook.[1]  On October 13, 2006, Plaintiff filed her Motion for Remand. Defendants filed its Response to Plaintiff's Motion for Remand on October 30, 2006.

---

[1] Defendants' First Notice of Removal was based on entirely different grounds as this Removal and that pleading is attached as Exhibit "A".

3.      Subsequently, the Honorable Marcia Crone issued an Order granting Plaintiff's Motion for Remand on December 21, 2006, but explicitly held that Defendants "met their burden of establishing that there is no reasonable possibility Alsbrook could be found liable" for any misrepresentation regarding the Policy.[2]

4.      Once the case was remanded, the parties continued to engage in discovery.  To date, the parties have exchanged initial disclosures and Defendants have responded to Plaintiff's written discovery.  Additionally, Plaintiff was presented for deposition on January 8, 2007 and Alsbrook was deposed on January 23, 2007.

5.      Defendants now remove this matter based on the recent testimony offered by Plaintiff during her deposition.  Specifically, Plaintiff has now testified that she has no factual basis to claim that Alsbrook violated the Texas Insurance Code as alleged in her Original Petition.

6.      The material required by Local Rule LR81 are attached as Exhibits "C", "D", and "E" and incorporated by reference.  The amount in controversy, exclusive of interest and costs, exceeds $75,000 according to Plaintiff's Original Petition (*See* Plaintiff's Original Petition paragraph 3.2).

7.      At the time Plaintiff filed her Original Petition, Plaintiff was an individual residing in Jefferson County, Texas and was domiciled and citizen of the State of Texas. Defendants, ACE American Insurance Company and ESIS, Inc., are foreign corporations and are, thus, construed as citizens outside of Texas.

8.      This Removal is based on testimony given by Plaintiff on January 8, 2007.  This Removal is being filed within 30 days of Plaintiff's deposition testimony and, as such, this Removal is timely.

---

[2] See Order dated December 21, 2006, p. 11 attached as part of Exhibit "C".

## II.
## BACKGROUND

9.        Defendant Linda Alsbrook is a claim representative employed by ESIS who handled the Plaintiff's workers compensation claim on behalf of ACE. Defendant Linda Alsbrook has consented to this removal. Although Ms. Alsbrook is a Texas citizen, Plaintiff has no evidence that Alsbrook, herself, committed a violation of the Texas Insurance Code. Defendants contend Ms. Alsbrook has been joined in an improper effort to defeat diversity. A defendant may be disregarded as a party if the court determines that her joinder is an improper device to defeat diversity jurisdiction and prevent removal. *Madison v. Vintage Pet., Inc.*, 114 F.3d 514 (5th Cir. 1997); see also *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (adopting the term "improper joinder" as being more consistent with statutory language than "fraudulent joinder," which has been used in the past).

## III.
## BASIS FOR REMOVAL: PLAINTIFF'S DEPOSITION TESTIMONY

10.       The following deposition testimony demonstrates Plaintiff has no factual basis to support her claims against Alsbrook:[3]

- Jones does not recall any conversations with Alsbrook;[4]

  Q. Okay. Do you recall having any conversations with an individual by the name of Linda Alsbrook?
  A. I don't remember talking to her. I got a letter from her.
  Q. You've not had any conversations with her?
  A. Huh-uh.

  * * *

  Q. So as you're sitting here today, you don't recall any conversations with Linda Alsbrook?
  A. Huh-uh.
  Q. "No"?
  A. No.

---

[3] Plaintiff's entire deposition transcript is attached to Defendants' removal papers as Exhibit "E". However, excerpts from Ms. Jones' transcript are cited here for the Court's convenience.
[4] See Deposition Transcript of Darcel Jones p. 141: lines 11-16; 142-43: 23-2; 158: 21-24.

* * *

Q.  Okay.  Just to kind of summarize what we've been talking about here, you've never had a conversation with Ms. Alsbrook, correct?
A.  Not that I can recall.

- Jones has no evidence of <u>any</u> unsatisfactory investigation by Alsbrook;[5]

Q.  Okay.  Do you have any evidence that Linda Alsbrook refused to pay your claim without conducting a reasonable investigation?
A.  (Witness nodded.)
Q.  You have to answer out loud.
A.  I don't remember her.

* * *

Q.  Okay.  As you sit here today, do you have any evidence that any of my clients failed to properly investigate your workers compensation claim?
A.  No.

- Jones cannot explain why she sued Alsbrook;[6]

Q.  What about Mrs. Alsbrook, do you have any evidence Ms. Alsbrook intentionally mishandled your claim?
A.  I don't know Ms. Alsbrook, so nothing.
Q.  Ms. Jones, why did you sue Ms. Alsbrook?
A.  Ms. who?
Q.  Ms. Alsbrook.  Do you have any reason for suing Ms. Alsbrook?
A.  (Witness shrugged.)
Q.  I'm going to require you to make an affirmative answer "yes" or "no.
A.  I don't know.  I don't know Ms. Alsbrook.
Q.  Do you have any reason to sue Ms. Alsbrook?
A.  I don't know who she is.
Q.  Okay.
A.  Who is she?

- Jones has no evidence that Alsbrook mishandled her claim;[7]

Q.  Okay.  Do you have any evidence that Ms. Alsbrook was actually aware and was handling your claim in a way that was false, deceptive or unfair?
A.  I don't know Ms. Alsbrook.  I don't know.
Q.  Okay.  Do you have any evidence Ms. Alsbrook failed to make a prompt and fair settlement regarding your claim?

---

[5] *Id*. at 141: lines 17-22; 172: lines 5-8.
[6] *Id*. at 145: lines 8-23.
[7] *Id*. at 146: lines 14-21; 159: lines 5-10; 172: lines 9-12.

4

A.  No.

\* \* \*

Q.  Okay.  Do you have any evidence, as you sit here today, that Ms. Alsbrook
mishandled your lower back claim?
A.  (Witness shook head.)
Q.  You have to answer in the affirmative.
A.  No.

\* \* \*

Q.  And do you have any evidence that any one of my three clients failed to
properly handle your claim, your lower back claim?
A.  Not that I know of.

- Jones has no evidence of <u>any</u> misrepresentation by Alsbrook;[8]

Q.  Okay.    What  evidence  do  you  have  that  Ms.  Alsbrook  ever  made  a
misrepresentation to you?
A.  Ms. who?
Q.  Alsbrook.  Do you have any --
A.  No.
Q.  What evidence do you have that Ms. Alsbrook made any untrue statements to
you?  Do you have any evidence?
A.  All I got is the letters that they sent me from workers' comp.  I don't know
who they are from.
Q.  Okay.  But you've never spoken with Ms. Alsbrook, to your recollection,
correct?
A.  No.
Q.  Okay.  So she didn't make a verbal statement to you that was untrue, correct?
A.  No.
Q.  Because you didn't talk to her.  What information do you have Ms. Alsbrook
didn't tell you an important fact?
A.  I don't know.  I didn't talk to her.
Q.  Okay.  And if you didn't talk to her, then Ms. Alsbrook couldn't have made a
statement to you in a way that misled you to a false conclusion, correct?
A.  No.
Q.  That's correct?
A.  Correct.
Q.  Okay.  What evidence do you have that Ms. Alsbrook failed to disclose
something to you?
A.  Nothing.

---

[8] *Id.* at 144-45: lines 1-4.

## IV.
## STANDARD FOR SECOND REMOVAL

11.     The Fifth Circuit recognizes a defendant's right to seek subsequent removals after

remand. *See S.W.S. Erectors, Inc. v. Infax, Inc.* 72 F.3d 489, 494 (5th Cir. 1996)(citing

*Browning v. Navarro,* 743 F.2d 1069, 1079-80 n. 29 (5th Cir. 1984) (noting that second removal

petitions are permitted)). As a general rule, once a case is remanded to state court, a defendant is

precluded only from seeking a second removal *on the same ground.* The prohibition against

removal "on the same ground" does not concern the theory on which federal jurisdiction exists

(i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the

case removable. *See O'Bryan v. Chandler,* 496 F.2d 403, 410 (10th Cir.), *cert. denied,* 419 U.S.

986, 95 (1974); *see also One Sylvan Road North Assocs. v. Lark Int'l, Ltd.,* 889 F.Supp. 60, 62,

63 (D.Conn.1995) ("the fact that a case was initially removed and remanded does not itself

preclude removal a second time around. A defendant who fails in an attempt to remove on the

initial pleadings can file a second removal petition *when subsequent pleadings or events reveal a*

*new and different ground for removal.* By adding the second paragraph of § 1446(b), Congress

intended that a party be permitted successive removals" [emphasis added] [citations and

quotations omitted]").

## V.
## *HORNBUCKLE* IS CONTROLLING

12.     The facts of this case are on point with the facts of *Hornbuckle v. State Farm*

*Lloyds,* 385 F.3d 538 (5th Cir. 2004) because both cases involve similar testimony from the

plaintiff, virtually the same arguments from plaintiff's counsel, and the same basis for removal.

In *Hornbuckle,* the Fifth Circuit concluded the plaintiff failed to bring forward any substantial

evidence to support a claim against Kirkpatrick, the State Farm adjuster. While the Fifth Circuit

acknowledged the Texas Supreme Court ruling that an insurance company employee who in the

course of his employment engages in the business of insurance is a "person" whose conduct is regulated by Article 21.21 of the Texas Insurance Code and who is subject to liability thereunder for his violations thereof, it concluded:

> "that there is no reasonable possibility that Texas would allow recovery under Article 21.21 (or the Texas Deceptive Trade Practices Act (DTPA)) against an insurance company employee, who in the course of his employment engages in business of insurance, *in the absence of* evidence sufficient to sustain a finding that that employee *himself* committed a violation of Article 21.21 (or the DTPA) (and that such violation was a cause of damage or legally recognized harm to the plaintiff)."[9]

13.    In *Hornbuckle*, State Farm introduced the deposition testimony of Ms. Hornbuckle to support removal of the case to Federal Court. The Fifth Circuit recognized the closest that Hornbuckle ever came to specifying any complaint against Kirkpatrick was as follows:

> "... He sent people to me, that being Mr. Perdue and other people who came into my home, who he led me to believe or represented they were people who would work with me, be honest and who were knowledgeable in their jobs. And I have since learned that that is not the case."[10]

14.    In light of the above testimony, the Fifth Circuit concluded Hornbuckle <u>failed</u> to bring forward any substantial evidence to support a claim against Kirkpatrick. Hornbuckle <u>failed</u> to submit any evidence that the engineer, Perdue was incompetent, dishonest, biased or "result oriented," nor that any such characteristic of Perdue was or should have been known to Kirkpatrick; nor did Hornbuckle point [the Court] to anything in the record which she contended constituted any such evidence.[11] The Fifth Circuit eloquently concluded:

> "[f]or removal purposes, a local defendant is deemed fraudulently joined not only

---

[9] The Fifth Circuit Court of Appeals in *Hornbuckle* reviewed only the district court's award of attorney fees. While the Court did not review the decision to remand itself, the Court did, as part of their examination of the award of fees, consider the objective validity of the removing party's efforts at the time that party attempted to remove the case. In light of their review, the Fifth Circuit held that State Farm had objectively reasonable grounds for believing that removal was proper in that there was **no arguably reasonable possibility Hornbuckle could produce sufficient evidence to sustain a finding of actionable wrongdoing on Kirkpatrick's part.**

[10] *Id.*

[11] *Id.*

when there is no arguably reasonable basis for predicting that the local law would
recognize the cause of action pled against that defendant, but also when, as shown
by piercing the pleadings in a summary judgment type procedure, there is no
arguably reasonable basis for predicting that the plaintiff would produce sufficient
evidence to sustain a finding necessary to recover against that defendant."[12]

Were this not the rule, the removal rights of out-of-state defendants would largely be theoretical
and practically meaningless.[13]

15.     As was the situation before the Fifth Circuit in *Hornbuckle*, Plaintiff in this case
has no evidence (summary judgment-type or otherwise) that Alsbrook, herself, violated the
Texas Insurance Code (or the DTPA) or any other legal duty owed by her to Plaintiff.

## VI.
## PLAINTIFF'S SWORN TESTIMONY PRECLUDES ANY CLAIM AGAINST ALSBROOK INDIVIDUALLY

16.     Plaintiff has alleged a total of six Texas Insurance Code violations committed by
Alsbrook.  Plaintiff's own sworn testimony establishes that she has no real claims against
Alsbrook. For example, Plaintiff alleged:

* Linda Alsbrook "failed to attempt to effectuate a prompt, fair and equitable settlement
  of a claim with respect to which liability has become reasonably clear";[14]

Plaintiff's own sworn testimony disproves this allegation.  Plaintiff testified:

> Q.  Okay.  Do you have any evidence Ms. Alsbrook failed to make a prompt and
> fair settlement regarding your claim?
> A.  No.[15]

* Plaintiff's petition also alleges:  Linda Alsbrook "failed to provide promptly a
  reasonable explanation, in relation to the facts or applicable law, for the denial of a
  claim";[16]

Plaintiff's own sworn testimony also disproves this allegation.  Plaintiff testified:

> Q.  What about Mrs. Alsbrook, do you have any evidence Ms. Alsbrook
> intentionally mishandled your claim?

[12] *Id.*
[13] *Id.*
[14] *See* Plaintiff's Original Petition p. 4, para. 5.2.
[15] *See* Jones' depo. at 146: lines 18-21.
[16] *See* Plaintiff's Original Petition p. 5, para. 5.4.

8

A.  I don't know Ms. Alsbrook, so nothing.
Q.  Ms. Jones, why did you sue Ms. Alsbrook?
A.  Ms. who?
Q.  Ms. Alsbrook.  Do you have any reason for suing Ms. Alsbrook?
A.  (Witness shrugged.)
Q.  I'm going to require you to make an affirmative answer "yes" or "no.
A.  I don't know.  I don't know Ms. Alsbrook.
Q.  Do you have any reason to sue Ms. Alsbrook?
A.  I don't know who she is.
Q.  Okay.
A.  Who is she?

\* \* \*

Q.  Okay.  Do you have any evidence that Ms. Alsbrook was actually aware and was handling your claim in a way that was false, deceptive or unfair?
A.  I don't know Ms. Alsbrook.  I don't know.

\* \* \*

Q.  Okay.  Do you have any evidence, as you sit here today, that Ms. Alsbrook mishandled your lower back claim?
A.  (Witness shook head.)
Q.  You have to answer in the affirmative.
A.  No.

\* \* \*

Q.  And do you have any evidence that [Alsbrook] failed to properly handle your claim, your lower back claim?
A.  Not that I know of.[17]

Additionally, Alsbrook's decision letter disproves this allegation.[18]  Alsbrook promptly gave Plaintiff the explanation that entitlement to benefits were being <u>disputed</u> (not denied) based on the following reasons:

- "You elected to file for compensation benefits in Virginia and did not seek to file benefits in Texas until your claim was denied in Virginia on October. 2, 2004 [sic]";
- "You elected to file your back claim for medical under your group coverage until as you ran into financial difficulty [sic]";
- "You have no medical to support a disability due to your injury"; and
- "You didn't report your claim as work related injury timely but reported it to your employer only after he receive a providers bill and called you to ask why he was getting a bill from a hospital [sic]".

---

[17] *See* Jones' depo. at 145: lines 8-23; 146: lines 14-17; 159: lines 5-10; 172: lines 9-12.
[18] *See* Notice of Disputed Issues attached as Exhibit F.

There is no support for Plaintiff's allegation and, in fact, the decision letter itself disproves the allegation.

- Plaintiff's Petition also alleges Linda Alsbrook "refused to pay a claim without conducting a reasonable investigation with respect to the claim";[19]

Plaintiff's own sworn testimony disproves this allegation. Plaintiff testified:

> Q.   Okay.  Do you have any evidence that Linda Alsbrook refused to pay your claim without conducting a reasonable investigation?
> A.   (Witness nodded.)
> Q.   You have to answer out loud.
> A.   I don't remember her.

> * * *

> Q.   Okay.  As you sit here today, do you have any evidence that [Alsbrook] failed to properly investigate your workers compensation claim?
> A.   No.[20]

- Plaintiff's Petition also alleges Linda Alsbrook "misrepresented the insurance policy under which it affords workers' compensation coverage to Ms. Jones, by making an untrue statement of material fact";[21] and Linda Alsbrook "misrepresented the insurance policy under which it affords workers' compensation coverage to Ms. Jones, by failing to state a material fact that is necessary to make other statements made not misleading"; [22]and Linda Alsbrook "misrepresented the insurance policy under which it affords workers' compensation coverage to Ms. Jones, by making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed".[23]

Plaintiff's own sworn testimony disproves each of these allegations of misrepresentation.  Plaintiff testified:

> Q. Okay.  Do you recall having any conversations with an individual by the name of Linda Alsbrook?
> A.   I don't remember talking to her.  I got a letter from her.
> Q.   You've not had any conversations with her?
> A.   Huh-uh.

> * * *

---

[19] *See* Plaintiff's Original Petition p. 5, para. 5.5.
[20] *See* Jones' depo. at 141: lines 17-22; 172: lines 5-8.
[21] *See* Plaintiff's Original Petition p. 5, para. 5.6.
[22] *Id.* at para. 5.7.
[23] *Id.* at p. 6, para. 5.8.

Q.  So as you're sitting here today, you don't recall any conversations with Linda Alsbrook?

A.  Huh-uh.

Q.  "No"?

A.  No.

\* \* \*

Q.  Okay.  Just to kind of summarize what we've been talking about here, you've never had a conversation with Ms. Alsbrook, correct?

A.  Not that I can recall.[24]

\* \* \*

Q.  Okay.   What evidence do you have that Ms. Alsbrook ever made a misrepresentation to you?

A.  Ms. who?

Q.  Alsbrook.  Do you have any --

A.  No.

Q.  What evidence do you have that Ms. Alsbrook made any untrue statements to you?  Do you have any evidence?

A.  All I got is the letters that they sent me from workers' comp.  I don't know who they are from.

Q.   Okay.  But you've never spoken with Ms. Alsbrook, to your recollection, correct?

A.  No.

Q.  Okay. So she didn't make a verbal statement to you that was untrue, correct?

A.  No.

Q.  Because you didn't talk to her.  What information do you have Ms. Alsbrook didn't tell you an important fact?

A.  I don't know.  I didn't talk to her.

Q.  Okay.  And if you didn't talk to her, then Ms. Alsbrook couldn't have made a statement to you in a way that misled you to a false conclusion, correct?

A.  No.

Q.  That's correct?

A.  Correct.

Q.   Okay.  What evidence do you have that Ms. Alsbrook failed to disclose something to you?

A.  Nothing.[25]

17.    Plaintiff's own sworn testimony establishes that Alsbrook was improperly joined in this matter to destroy diversity jurisdiction.  Defendants have pierced Plaintiff's pleadings in a summary judgment-type procedure, and established there is no arguably reasonable basis for

---

[24] *See* Jones' depo. at 141: lines 11-16; 142-43: 23-2; 158: 21-24.

[25] *Id.* at 144-45: lines 1-4.

predicting that Plaintiff could produce sufficient evidence to sustain a finding necessary to recover against Alsbrook. Plaintiff's own testimony establishes that she can not. Accordingly, this Court should disregard Alsbrook, a fraudulently joined Defendant, for purposes of determining diversity.

**VII.**
**NO FIDUCIARY RELATIONSHIP BETWEEN PLAINTIFF AND LINDA ALSBROOK**

18. While it is true that Alsbrook was not listed under Plaintiff's cause of action for breach of duty of good faith and fair dealing, she was nonetheless listed among the Defendants with respect to allegedly committing "fraudulent and malicious actions".[26] Accordingly, it would appear that Plaintiff is seeking punitive damages against Alsbrook for violations of the common law duty of good faith and fair dealing.

19. The Texas Supreme Court has held that the duty of good faith and fair dealing only applies to insurance carriers. It does not extend to the insurance company's employees. *Natividad v. Alexsis, Inc.*, 875 S.W. 2d 695, 697 (Tex. 1994); *Aetna Casualty & Surety Company v. Gasten*, 906 S.W.2d 543 (Tex. App.—San Antonio, 1995, no writ). Thus, because Linda Alsbrook was an ESIS, Inc. employee, she owed no duty of good faith and fair dealing to Plaintiff, and she cannot be sued for breaching the duty of good faith and fair dealing as a matter of law.

20. In the alternative, to the extent Plaintiff claims Alsbrook breached any duty owed to her, Plaintiff has failed to establish the requisite special relationship between her and Alsbrook that gives rise to any legal duty. By way of further illustration, a fiduciary duty is an extraordinary duty that is not lightly created. *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 301 (Tex. App.—El Paso 1996), *aff'd on other grounds,* 966 S.W.2d 482 (Tex.

---

[26] Defendants objected to Plaintiff's inclusion of common law bad faith allegations based on Plaintiff's third cause of action for punitive damages for bad faith (*See* Plaintiff's Original Petition paragraphs. 7.1-7.2).

1998); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex. App.—Dallas 1989, no writ). Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship.

21.     To impose an informal fiduciary relationship in a business transaction, the requisite relationship of trust and confidence must exist prior to, and apart from the agreement made the basis of this suit. *R.R. Street & Co., Inc. v. Pilgrim Enter., Inc.,* 81 S.W.3d 276, 305 (Tex. App.-Houston [1st Dist.] 2001, no pet.). No Texas case has ever found a fiduciary relationship between an insured and its insurer.

22.     At all times relevant hereto, Linda Alsbrook, as a claims representative, was acting within the course and scope of her employment with ESIS. Plaintiff can not demonstrate that "the requisite relationship of trust" between she and Alsbrook existed "prior to, and apart from the agreement made the basis of this suit." *See Id.* The extent of Alsbrook's involvement with Plaintiff was limited to handling Plaintiff's claim; and it was only within the course and scope of Alsbrook's employment with ESIS that Alsbrook had any dealings with Plaintiff and the handling of her claim.

23.     The insurance agreement created contractual privity between Plaintiff and ACE American Insurance Company and not Plaintiff and Alsbrook. Any duty owing to Plaintiff would arise by virtue of the contract alone and would be a duty flowing from *insurer* to insured. As a claims representative of ESIS, Alsbrook had no duty independent of ACE flowing directly to Plaintiff. Indeed, Texas law is clear that the *insurer alone* has a non-delegable duty to its insured. *See French v. State Farm Ins. Co.*, 156 F.R.D. 159, 163 (S.D. Texas 1994).

24.     In *French*, the insured filed a lawsuit against the insurance company and the adjuster who handled his claim alleging breach of contract, breach of duty of good faith and fair

13

dealing, and violations of the Texas Insurance Code. *Id.* at 161.  In analyzing French's allegations against the claims adjuster, the Court held that the claims against the adjuster have "no legally independent basis and, therefore, are regarded merely as actions for breach of contract" against the insurer.  *Id.* at 162.  Because the Court recognized that the insurance company alone has a non-delegable duty to its insured and remains liable for the actions of their agents and contractors, French had no viable claim against the claims adjuster in his individual capacity.  *Id.* at 163.  The Court in *French* articulated that French's claim against the adjuster was really a claim for negligent claims handling.  *Id.* at 162.  Notwithstanding the same, the *French* Court noted that Texas law does not recognize a cause of action for negligent claims handling.  *Id. citing United Serv. Auto. Ass'n v. Pennington*, 810 S.W.2d 777, 783-84 (Tex. App.—San Antonio 1991, writ denied).

25.    Other courts have likewise recognized that Texas law is well settled that an insured does not have a cause of action against its insurer for negligent claims handling. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding "there is no duty beyond the contract itself . . .[I]n essence, Texas law does not recognize a cause of action for negligent claims handling.") (citing *United Servs. Automobile Ass'n v. Pennington*, 810 S.W.2d 777, 783-84 (Tex. App.—San Antonio 1991, writ denied)).

26.    Because Plaintiff has not provided any evidence to support her allegations against Defendant Alsbrook, Plaintiff has no possibility of recovering against this fraudulently joined Defendant and she may be disregarded for purposes of determining diversity.  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

## VIII.
## CONCLUSION

Plaintiff's own testimony disproves that Alsbrook individually committed a violation of the Texas Insurance Code and is subject to individual liability for a claim she handled in the

course and scope of her employment as a claims adjuster. Because Plaintiff is a citizen of Texas and Defendants, ACE American Insurance Company and ESIS, Inc., are foreign corporations, and the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction based on diversity of citizenship. 28 U.S.C. § 1132. As such, this removal action is proper.

Defendant demanded a jury in the State Court Action, and demands a jury in this action.

WHEREFORE, ACE American Insurance Company, ESIS, Inc. and Linda Alsbrook, respectfully request that the above entitled action be removed from the 60th Judicial District Court of Jefferson, Texas to the United States District Court for the Eastern District of Texas Beaumont Division.

Respectfully submitted,

Martin, Disiere, Jefferson & Wisdom, L.L.P.

By: _____
Christopher W. Martin
TBA No. 13057620
Federal ID No. 13515

**ATTORNEY-IN-CHARGE FOR
DEFENDANTS, ACE AMERICAN
INSURANCE COMPANY, ESIS, INC. and
LINDA ALSBROOK**

OF COUNSEL:

R. Andrew Schulz
TBA No. 24033048
Federal I.D. No. 35960
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
Telephone:  713-632-1700
Facsimile   713-222-0101

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above **Notice of Removal** has been forwarded by certified mail, return receipt requested, on this the 7th day of February, 2007 to:

Mr. Michael P. Doyle                              *Via CM/RRR 7004 1160 0007 3709 7246*
Doyle Raizner LLP
One Houston Center
1221 McKinney, Suite 4100
Houston, Texas 77010

R. Andrew Schulz

**AFFIDAVIT**

THE STATE OF TEXAS　　§
　　　　　　　　　　　　§
COUNTY OF HARRIS　　　§

I, R. Andrew Schulz, being duly sworn, state that I am the attorney for ACE American Insurance Company, ESIS, Inc. and Linda Alsbrook in this litigation; that I have prepared and read the foregoing Notice of Removal; and, that the matters set forth and contained therein are true and correct to the best of my knowledge and belief.

_____
R. Andrew Schulz

SUBSCRIBED AND SWORN TO BEFORE ME on this ___7th___ day of February 2007.

_____
Notary Public in and for
The State of T E X A S

SHAWN R. DICKERSON
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JUNE 3, 2008